UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LYNN JUSTINAK,  

    Plaintiff,

v.

JACLYN E. KASS, et al.,

    Defendants.
    _____/

Case No.  2:20-cv-00001

Hon.  Paul L. Maloney
U.S. District Judge

# REPORT AND RECOMMENDATION

## I.  Introduction

This Report and Recommendation (R&R) addresses the summary judgment motions filed by Defendants, who assert they are entitled to qualified immunity. (ECF No. 81.)

The Plaintiff in this case – Lynn Justinak, who is the personal representative of the Estate of Ryan Alessandroni – filed this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff sues two employees of the Michigan Department of Corrections (MDOC).  Defendant Stephanie R. Dennocenzo works as a probation and parole officer in Dickinson County, and Defendant Jaclyn E. Kass works as a probation and parole officer in Gogebic County.  (ECF No. 1.)  Justinak claims that Defendants violated Alessandroni's Eighth Amendment rights by failing to recommend treatment for his substance abuse and by failing to inform the Dickinson County Sheriff's office and jail officials that Alessandroni was a suicide risk. Unfortunately, Alessandroni hanged himself in the jail and died from his injuries. Justinak's Fourteenth

Amendment claim was dismissed by stipulation and order on April 7, 2021. (ECF No. 34.)

Defendants move for qualified immunity on Justinak's Eighth Amendment claims. Clearly established law requires officials to address risks of suicide when they obtain knowledge of a strong likelihood of suicide. A prison official may not ignore the risk but must take affirmative steps to mitigate the risk. The Eighth Amendment requires officials to address serious medical and mental health needs when an inmate or pretrial detainee presents a strong likelihood of suicide.

In the opinion of the undersigned, Defendants did not perceive that Alessandroni presented a strong likelihood of suicide. Justinak argues that Defendants were aware of the risk based upon Alessandroni's increasing abuse of alcohol, his depression after being arrested for driving while intoxicated, and from her December 7, 2018, email and December 13, 2018, letter expressing concerns that Alessandroni was depressed and that his depression would lead to self-harm.

Although the Court sympathizes with Justinak and views Alessandroni's death is a tragic loss, the record before the Court does not establish a genuine issue of material fact regarding whether Defendants were aware of a strong likelihood of suicide. Alessandroni did not have a history of suicide attempts and expressed no suicide ideation to Defendants or jail staff. As of December 11, 2018, Alessandroni was incarcerated in the Dickinson County jail and under the care of Dickinson County jail officials. Alessandroni denied to jail officials that he had ever attempted suicide or had suicidal thoughts. The record establishes that no rational jury could conclude

2

that Defendants perceived a strong likelihood that Alessandroni would attempt suicide in the Dickinson County jail and that they deliberately disregarded that perceived risk by possessing a sufficiently culpable state of mind. In the opinion of the undersigned Defendants are entitled to qualified immunity.

## II. Factual Allegations

On October 14, 2014, Alessandroni was convicted of a felony involving the illegal sale or use of a financial transaction device. (*Id.*, PageID.3.) A few months later, on December 2, 2014, Alessandroni was placed on probation under the supervision of the MDOC.

Between July of 2018 and January of 2019, Alessandroni was supervised by Dennocenzo in Dickinson County and by Kass in Gogebic County. (*Id.*) Plaintiff says that by July of 2018, Alessandroni's use of alcohol developed into a serious substance abuse problem which required treatment. (*Id.*) On July 20, 2018, Alessandroni was arrested by a Gogebic County Sheriff Deputy for driving while intoxicated. (*Id.*) Alessandroni's blood alcohol level was .30 grams of alcohol per 100 milliliters of blood. (*Id.*) This exceeded the legal limit of .08 grams of alcohol per 100 milliliters of blood. (*Id.*) Plaintiff says that Alessandroni was having suicidal thoughts and Defendants knew that he needed treatment and was a suicide risk. (*Id.*, PageID.3-4.)

On July 23, 2018, Dennocenzo requested a probation violation charge. (*Id.*, PageID.4.) Alessandroni pleaded guilty to the charge on September 17, 2018. (*Id.*) Alessandroni was scheduled to attend inpatient alcohol abuse treatment, but on

November 2, 2018, he was arrested while driving to his inpatient treatment location by a Michigan State Police Trooper for operating a motor vehicle while intoxicated and with open intoxicants in the vehicle. (*Id.*) Defendants were aware of the arrest and charges. (*Id.*)

Alessandroni was incarcerated in the Dickinson County Correctional Center until he posted bond. (*Id.*, PageID.5.) Dennocenzo requested a parole violation charge on November 5, 2018. (*Id.*) Alessandroni was scheduled for a contested parole violation hearing on the second parole violation and for sentencing on his first parole violation on December 4, 2018. (*Id.*) Plaintiff says that on that date, Defendants knew that Alessandroni had tested positive for alcohol at the Ironwood Public Safety Department two weeks earlier in violation of his parole. (*Id.*)

On December 7, 2018, Justinak sent Defendant Kass the following email:

> Good Morning,
>
> I am very concerned about Ryan. I know my sister has been in contact with you regarding rehab. Ryan is very depressed and needs counseling and rehab. Sitting in jail is not helping him with his addiction. As his probation officer there must be something you can do as far as making the recommendation for rehab. He is not seeing his kids and the longer he doesn't get help the longer his ex wife will keep his kids away from him. Ryan is a great person who has an addiction. I know all of his issues are because of his addiction. I did some research on blood alcohol levels and when Ryan was arrested for OWI in Dickinson County he should have been taken to a hospital. Do they not know he could have died? I am concerned he will go through DT's which is also dangerous. He needs help!
>
> His lawyer in Iron Mountain is a piece work he doesn't return my calls and pretty much doesn't care just there collecting a paycheck. What can I do as his mother? I would like to reach out to the judge and see if we can have rehab court ordered.

4

(ECF No. 82-8, PageID.348-349.)

Alessandroni was an inmate at the Dickinson County Corrections Center between December 11, 2018, and January 6, 2019. (*Id.*) On December 13, 2018, Plaintiff Justinak sent identical letters addressed to Dickinson County Prosecutor Richards and Gogebic County Prosecutor Jacobs. The letters included one sentence – the third sentence in paragraph two – about her concern that Alessandroni will harm himself because he was depressed. (*Id.*, PageID.6.) The letter stated:

> I am Ryan Alessandroni's mother and I am writing this letter in regards to his current legal issues. I am very concerned about him. I would like to propose to you the possibility of Ryan moving to Wyoming with his family. I live in Casper and there is a treatment facility literally 2 miles from my home. I feel Ryan would benefit moving to Casper for the treatment center and he can be employed full time with the company his brother is working for in Casper. The company pays very well and offers benefits something he won't have in Ironwood.
>
> Michigan is not the place for Ryan especially Ironwood. I grew up in Ironwood and it was a different place. The problem with that community is there has nothing to offer for employment to make a living. The community is depressing and the substance abuse in that area is one of the highest in Michigan. Ryan has been depressed and I am concerned he will harm himself. His brother and sister live in Wyoming and I feel he needs family. By obtaining employment here he would have the income to payoff his fines and provide for his children.
>
> My husband is a corrections officer and can help keep Ryan on track. Mike has been Ryan's father since he was seven. If there is a possibility for Ryan to live here I would assume there is some way he could see a probation officer here. We have never had anyone with alcoholism in our family. We never had alcohol in our home when Ryan was growing up. He was one of the most respectful kids you could meet. Unfortunately he married someone who didn't love him and instead of getting out of that situation he turned to alcohol which has been the cause of all of his legal issues.
>
> If there is a chance we could have Ryan move to Wyoming I will come and pick him up. I don't want him in such a depressing area that like I said previously has nothing to offer.
>
> Please call me if there is something else I can do to help my son! My sister has been my rock in helping the situation with Ryan. Now is the time for him to recover so he can be the father his children deserve.

(ECF No. 82-10, PageID.361 and ECF No. 82-11, PageID.363.)

Defendants Kass and Dennocenzo were both forwarded this letter around December 17, 2018. (*Id.*) Justinak says that Defendants did not provide the letter

5

to the Dickinson County Corrections Center or the Dickinson County Sherriff's Department. (*Id.*) Justinak asserts that if the Sheriff's Department or jail had received the information in the letter, preventive measures would have been taken to prevent Alessandroni from harming himself. (*Id.*)

Neither Defendants Kass or Dennocenzo petitioned the Court for modification of the terms of Alessandroni's probation based upon his behavior between July 20, 2018, and December 17, 2018, to address his substance abuse and mental health issues. (*Id.*, PageID.6-7.) Plaintiff believes that both Kass and Dennocenzo thought that Alessandroni needed at least two months of substance abuse treatment. (*Id.*, PageID.6.)

Unfortunately, on January 6, 2019, Alessandroni hanged himself in the bathroom of his cellblock. (*Id.*) Alessandroni died from his injuries on January 14, 2019. (*Id.*)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## IV. Qualified Immunity

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any

order.  *Id.* (citing *Pearson*, 555 U.S. at 236).  A government official is entitled to qualified immunity if either step of the analysis is not satisfied.  *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred.  *Graham v. Connor*, 490 U.S. 386, 394 (1989).  The court considers the state of the law at the second step.  As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate."  *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).  As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd*, *supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix*

> *v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff, supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson, supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix, supra*, at 309 (quoting *Anderson, supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*D.C. v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. It obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when an official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). This includes a prisoner's serious psychological needs, "especially when they result in suicidal tendencies." *Comstock*, 273 F.3d at 703 (quoting *Horn by Parks v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994)).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "A plaintiff meets the objective prong of the Eighth Amendment analysis by showing that the inmate showed suicidal tendencies during the period . . . or that he 'posed a strong

9

likelihood of another suicide attempt.'" *Troutman v. Louisville*, 979 F.3d 472, 482-483 (6th Cir. 2020). Under the subjective prong, plaintiff must show that the defendant was aware of the serious medical need and disregarded that need. *Id.* at 483. "The failure to alleviate a significant risk that an officer 'should have perceived but did not' is insufficient for a claim of deliberate indifference. . . but such subjective knowledge may be inferred from the fact that a pretrial detainee's 'substantial risk' of harm was 'obvious.'" *Id.*, *citing Farmer* at 838, 842.

Plaintiff cites to the Northern District of Illinois case *Viero v. Bufano*, 925 F. Supp. 1374 (N.D. Ill. 1996) as support to show that Defendants violated clearly established law. In that case, the Court denied summary judgment to a probation officer because genuine issues of fact existed regarding whether her knowledge of decedent's previous mental health hospitalization, expressions of suicidal ideation, and the concerns expressed by decedent's mother raised genuine issues of material fact that the decedent "was a substantial suicide risk." *Id.* at 1384. As explained below, however, Defendants lacked similar knowledge in this case.

Defendants first argue that Justinak cannot establish that they violated Alessandroni's Eighth Amendment rights because they did not perceive a strong likelihood that Alessandroni would commit suicide. Defendants cite *Downard v. Martin*, 968 F.3d 594 (6th Cir. 2020) and *Gray v. Detroit*, 399 F.3d 612, 616 (6th Cir. 2005) ("The only conceivable way that any individual officer could have possibly concluded that Gray was a suicide risk was to have obtained and appropriately pieced together the knowledge of every other officer involved in the case."). The Sixth

10

Circuit set forth clearly established Eighth Amendment law to determine whether an official may be liable for failing to address a serious medical need to prevent suicide.

> "[I]t is not enough to establish that an official may have acted with deliberate indifference to some *possibility* of suicide, or even a *likelihood* of suicide; the test is a *strong likelihood* of suicide." *Galloway v. Anuszkiewicz*, 518 F. App'x 330, 336 (6th Cir. 2013); *see also Barber*, 953 F.2d at 239–40 (holding that a prison official must have "knowledge of a strong likelihood," not just a "mere possibility," that an inmate will attempt suicide); *Horn v. Madison Cty. Fiscal Court*, 22 F.3d 653, 660–61 (6th Cir. 1994) (same). This is a high bar and typically requires evidence that the inmate was already on suicide watch, previously attempted suicide under similar conditions, or recently expressed a desire to self-harm. *See Grabow v. County of Macomb*, 580 F. App'x 300, 309 (6th Cir. 2014) (collecting cases).

*Downard*, 968 F.3d at 601. "Despondency after an arrest, even if coupled with other stressors like drug withdrawal, does not itself lead to a 'strong likelihood' of suicide, at least if the inmate expressly denies feeling suicidal." *Troutman*, 979 F.3d at 483. However, "a prior [suicide] attempt alone is sufficient to a raise a dispute as to the objective component." *Id.*, at 484. In this context "proof of a prisoner's psychological needs manifesting themselves in suicidal tendencies with 'a strong likelihood that he would attempt to take his own life' are sufficiently serious." *Galloway*, 518 Fed. App'x. 330, 333. In that case, the Sixth Circuit rejected plaintiff's allegations that a physician failed to directly warn jail staff of a suicidal risk. *Id.* The Court explained that although plaintiff may have stated state law claims of malpractice or wrongful death "we conclude that no reasonable jury could find that Anuszkiewicz deliberately disregarded that risk by not taking the extra step of informing the jail staff that he thought the decedent was suicidal." *Id.* at 334.

11

It is undisputed that Alessandroni was arrested for driving under the influence of alcohol on his way to inpatient substance abuse treatment. (ECF No. 83-8.) It is undisputed that Defendants were aware of Alessandroni's need for substance abuse treatment. In the opinion of the undersigned, Alessandroni's substance abuse issues could be considered a serious medical condition that required treatment. But here, the issue is not just treatment for substance abuse issues, but whether Alessandroni presented a strong likelihood of a suicide risk. To meet the objective component of the Eighth Amendment by showing a serious medical need, Plaintiff must establish that Alessandroni "psychological needs manifest[ed] themselves in suicidal tendencies with a 'a strong likelihood that he would attempt to take his own life.'" *Galloway*, 518 Fed. Appx. at 333. For purposes of this motion, Defendants concede that Alessandroni had a serious medical need. (ECF No. 82, PageID.293.)

Alessandroni had not expressed to Defendants or a jail official any desire to take his own life, nor has Plaintiff established that Defendants had knowledge of any past attempts at suicide. (ECF No. 82-5.) The only indication that there might be a risk of harm, was from the statement by Justinak in the December 13 letters to the prosecutors. In that letter, Justinak attempted to convince the prosecutors that Alessandroni should be transferred to the State of Wyoming to be near his family. In the letters, Justinak wrote her concern in one sentence that Alessandroni was depressed and that he might hurt himself.[1]

---

[1] Plaintiff says that Defendants should have informed jail officials of her concerns in the December 13th letter. Dennocenzo testified in her deposition that she did notify jail officials of Justinak's concerns. (ECF No. 83-6, PageID.468.)

For purposes of this summary judgment motion, the critical issue is whether the facts can meet the subjective prong of Justinak's Eighth Amendment claim. This inquiry focuses on Defendants' knowledge that Alessandroni had a substance abuse problem, and particularly the December 7, 2018, email to Defendant Kass from Justinak, and the December 13, 2018, letter from Justinak to the prosecuting attorneys. The question is whether this information was enough to place Defendants on notice that there was a strong likelihood that Alessandroni would commit suicide.[2]

Standing alone, Defendants knowledge of Alessandroni's alcohol abuse and the December 7, 2018, email from Justinak to Kass that Alessandroni was depressed was not enough to place Defendants on notice that there was a strong likelihood that Alessandroni would commit suicide.

The issue is whether Justinak's December 13, 2018, letter was enough to tip the scale to find the existence of a genuine issue fact that Defendants were on notice that there was a strong likelihood that Alessandroni would commit suicide. "[I]t is not enough to establish that an official may have acted with deliberate indifference to some *possibility* of suicide, or even a *likelihood* of suicide; the test is a *strong*

---

There exists a question of fact as to whether the jail received this information because Sergeant Conery of the Dickinson County Jail testified that Dennocenzo did not inform the jail that Alessandroni may harm himself. (ECF No. 83-24, PageID.575.)
[2] Kass says that she thought Dennocenzo would notify jail officials and Dennocenzo says that she did notify jail officials. The record regarding the actions that Defendants took after they received the Justinak letter is not clear. A question of fact remains on what actions Defendants took after they received the letter from Justinak.

13

*likelihood* of suicide. This is a critical distinction because a finding of deliberate indifference requires a sufficiently culpable state of mind, which the Supreme Court has equated to criminal recklessness." *Galloway*, 518 Fed. Appx. at 336.

Defendants had no knowledge prior to Justinak's December 13, 2018, letter that there existed any likelihood that Alessandroni would commit suicide. Defendants received Justinak's December 13, 2018 letter, on December 17, 2018, after it was forwarded to them from their respective prosecutor's offices. At that time, Alessandroni had been incarcerated in the Dickinson County Jail since December 11, 2018.[3] While he was booked at the jail, a corrections officer conducted a suicide assessment as part of a medical screening. (ECF No. 82-5, PageID.332.) The assessment indicates that Alessandroni responded "no" to attempting suicide, ever considering suicide, considering suicide, or taking medication for a mental condition.[4] (*Id.*) A similar assessment was taken when Alessandroni was incarcerated in the Dickinson County Jail between November 2, 2018, and November 17, 2018. Alessandroni denied suicidal thoughts or a history of suicide attempts. (*Id.*, PageID.329.)

---

[3] Although, Justinak received an email from Alessandroni on December 27, 2018, while he was incarcerated in the Dickinson County Jail, she concedes that Alessandroni did not indicate that he was suicidal in the email exchange. (ECF No. 82-9, PageID.357-358.) Justinak did not speak with Alessandroni by telephone while he was incarcerated and is not aware of any conversations with other family members that Alessandroni may have had during his incarceration in the Dickinson County Jail. (*Id.*)

[4] The form indicates that Alessandroni also responded no to using alcohol.

Here the undisputed evidence is that Defendants could not have known that Alessandroni presented a *strong* likelihood of suicide even after they had received the December 13, 2018 letter. The letter did not indicate that Alessandroni informed anyone that he was contemplating suicide or had any suicide ideation. The letter expressed a mother's concern that her son was depressed and that he could harm himself. Regrettably, it appears that the letter was never forwarded to Dickinson County Jail officials. At least the record shows that jail officials deny receipt of the letter or any information from Justinak or from Defendants regarding concerns that Alessandroni may harm himself.

The Dickinson County Jail did provide a mental health assessment and was required under the Eighth Amendment to provide medical and mental health care. Alessandroni was incarcerated in the Dickinson County jail and on December 11, 2018, had a second suicide screening at that facility. (ECF No. 82-5.) Alessandroni had denied suicidal ideation or past suicide attempts. There was no evidence that suicide was likely or more importantly of **a strong likelihood of suicide**. There is no evidence that Kass or Dennocenzo were aware of a strong likelihood that Alessandroni would attempt suicide while confined in the Dickinson County jail. Regretfully, Alessandroni attempted suicide on January 6, 2019, while confined in the jail, and he died from his injuries on January 14, 2019.

The record establishes that no rational jury could conclude that Defendants perceived a strong likelihood that Alessandroni would attempt suicide in the Dickinson County jail and that they then deliberately disregarded that risk by

15

possessing "a sufficiently culpable state of mind – akin to an intent to punish – by not doing more." *Galloway*, 518 Fed. App'x at 335.

In the opinion of the undersigned, Defendants are entitled to qualified immunity.

## V.     Recommendation

It is recommended that the Court grant Defendants' motion for summary judgment.

NOTICE TO PARTIES:    Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).    Failure to file timely objections constitutes a waiver of any further right to appeal.   *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).    *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:     December 2, 2022                         /s/ *Maarten Vermaat*
                                                                        MAARTEN VERMAAT
                                                                        U.S. MAGISTRATE JUDGE